Filed 11/14/25  P. v. Holbrook CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARK HOLBROOK,<br><br>        Defendant and Appellant. | A168951<br><br>(San Francisco City & County<br>Super. Ct. No. CRI-22012240) |

A jury convicted defendant Mark Holbrook of four felonies involving his possession of a firearm in public, and the trial court sentenced him to two years in prison.  On appeal, he claims the court erred in two ways related to its denial of his objection under Code of Civil Procedure section 231.7 (section 231.7) to the prosecutor's peremptory challenge of a juror who voiced distrust of police officers.  Holbrook also claims the prosecutor committed misconduct in closing argument by shifting the burden of proof to him.  We reject these claims and affirm.[1]

---

[1] The abstract of judgment includes a $1200 probation-revocation restitution fine under section 1202.44 that was not imposed.  We order the abstract amended to remove this fine.

# I.
## FACTUAL AND PROCEDURAL
### BACKGROUND

Early on the morning of October 15, 2022, the San Francisco Police Department received a report about an incident on a Muni bus. An officer responded to McAllister Street and Van Ness Avenue and spoke to the bus driver. The driver stated that a passenger asked him to drive to Post Street. After the driver indicated that Post was not on his route, the passenger "pulled out [what] looked like a Glock with an extended clip." The driver then "pretended [he] was going to fix the bus and just took off." He saw the passenger walk away down the street.

Another police officer quickly located Holbrook about two blocks away from the bus, on Polk Street. In his pockets, Holbrook had a nine-millimeter semiautomatic pistol with no serial number and a bullet. Later testing confirmed that the gun was "a real firearm" and operable. Holbrook did not call any witnesses, and his main defenses at trial were that (1) the gun might be a replica firearm and (2) the chain of custody was broken, so the gun tested might not be the one seized from him.

The operative information charged Holbrook with four felony counts: being a felon in possession of a firearm, unlawfully carrying a concealed firearm, carrying a loaded firearm in public, and unlawfully possessing ammunition.[2] As to each count, it was alleged that he had six prior felony convictions in the state of Washington, and it was also alleged that he was

---

[2] Holbrook was charged under Penal Code sections 29800, subdivision (a)(1) (possessing firearm as felon), 25400, subdivision (a)(2) (carrying concealed firearm), 25850, subdivision (a) (carrying loaded firearm), and 30305, subdivision (a)(1) (possessing ammunition).

2

ineligible for probation based on those convictions.[3]  Finally, four aggravating factors were alleged as to all counts:  Holbrook's convictions were numerous or of increasing seriousness, he served a prior prison or jail term, he was on probation or other supervised release when he committed the crime, and his prior performance on probation or other supervised release was unsatisfactory.[4]

Trial on the main charges was bifurcated from that on the prior convictions and aggravating factors.  In the first phase, the jury convicted Holbrook of all four counts.  In the second phase, the jury found that he suffered the six prior convictions alleged.  It found not true the aggravating factor that he was on supervised release when he committed the crimes and found true the remaining three aggravating factors.

In September 2023, after finding that Holbrook was ineligible for probation, the trial court sentenced him to two years in prison.  The sentence was composed of the midterm of two years for being a felon in possession of a firearm and a concurrent midterm of two years for unlawfully possessing ammunition.  The midterm of two years was imposed and stayed for the remaining two convictions.

---

[3] The convictions alleged were a 2006 conviction for unlawful first degree criminal mischief, two 2014 convictions for domestic violence assault, a 2018 conviction for domestic violence witness tampering, and 2019 convictions for unlawful possession of a firearm and unlawful possession of a controlled substance.  Holbrook was alleged to be ineligible for probation under Penal Code section 1203, subdivision (e)(4).

[4] The aggravating factors were alleged under California Rules of Court, rule 4.421(b)(2), (3), (4), and (5), respectively.

## II.
### DISCUSSION

A.   *Holbrook Is Not Entitled to Relief on His Two Claims Related to the Section 231.7 Objection.*

Holbrook claims the trial court erred by (1) denying his request to seek racial demographic information from prospective jurors and (2) allowing the prosecution to exercise a peremptory challenge against a juror, S.K., who stated he was less likely to believe police officers than other witnesses. We reject both claims.

1.   Additional facts

Before trial, Holbrook moved under section 231.7 and the federal and state constitutions for the trial court "to elicit race and demographic information" from prospective jurors.[5] The motion argued that if jurors did not "self-identify [their] race prior to the commencement of voir dire," then Holbrook, who is Latino and Native American, might be "deprive[d] . . . of a meaningful record and means to enforce" his rights to an impartial jury and a trial free of racial discrimination.

Near the beginning of voir dire, before the trial court had ruled on Holbrook's motion, a prospective juror, S.K., raised his hand when the prosecutor asked whether anyone would be unable to "evaluate all witnesses' credibility by the same standard, regardless of what they do for a living or anything else in [their] background." S.K. explained that he was unsure whether he could "fully believe everything" that police officers might say, and

---

[5] The motion was also brought under Penal Code section 745, a provision of the California Racial Justice Act of 2020 (Assem. Bill No. 2542 (2019–2020 Reg. Sess.)) (RJA). The statute is related to section 231.7, as it broadly prohibits prosecution and sentencing "on the basis of race, ethnicity, or national origin" (Pen. Code, § 745, subd. (a)), but on appeal Holbrook does not make a claim under the RJA.

he agreed that he "would be less inclined to believe a police officer than [a] civilian." S.K. continued, "I don't think all police officers are bad people. I think that, though, I do have a bias. The people who are drawn to power would maybe seek out that sort of position." The prosecutor asked whether testifying police officers "would have a strike against them in [S.K.'s] view," and S.K. responded, "I would try not [to], but maybe, yeah. [¶] . . . [¶] It would depend on how I perceive them."

Later, after hearing argument from the parties, the trial court denied Holbrook's motion. The court found it "unnecessary" to obtain the requested information "from the entire 100 or so people" in the venire. The court indicated that "if there is an issue, . . . we can deal with it on a person-by-person basis."

Using S.K. as an example, Holbrook's counsel expressed concern that the ruling would require "targeting" an individual juror by removing the juror from the group to ask identity-related questions. The trial court responded, "I understand. I don't know [that] there's any alternative to that unless we're going to ask all 100 people for every category that the [RJA] protects, which I don't think we're going to do."

Later during voir dire, Holbrook's counsel asked whether any jurors had beliefs preventing them from being fair and impartial. S.K. raised his hand and observed that about half of the disclosed witnesses were police officers, who would seemingly have "an interest in this case beyond . . . just somebody walking by who has no interest, no real reason to lie." S.K. thought a police officer and the officer's "buddies" would "have more of a reason" to fabricate a story than would a "random" witness. Although S.K. would not automatically disbelieve everything officers said, they would have to "convince [him] they're being truthful . . . first." Defense counsel then

asked whether S.K. felt biased against Holbrook, and S.K. responded, "No. I'm just worried my bias is the other way."

The prosecutor followed up on this topic with S.K. She asked if he had previous negative experiences with the police, and he responded, "I mean, it's been several experiences for me personally. But I've been picked out of certain groups . . . [. W]ithout going into why I believe I was picked out of those groups, I believe that there were some prejudices involved. And I've seen that time and time again throughout my life, whether it was me, my friends, my family." But S.K. did not think such experiences had "much of a bearing" on this case, and his primary concern was "the stories [he had] read of once a police officer does get kind of into a situation that maybe wasn't exactly what happened, his buddies usually seem to back him up."

S.K. also reaffirmed that he would believe a civilian more than a police officer, so long as the civilian did not have a personal interest in the case. Although he would "do [his] best to follow the law," he thought police officers "have more riding on this than a random person walking down the street." S.K. could "easily see a reason why [police officers] might want to stretch certain parts of the story," whereas civilians who went out of their way to testify in court would have no reason to lie. The prosecutor concluded by asking whether S.K. could follow the instruction to evaluate witnesses equally, and he responded, "Yeah." The prosecutor asked, "Are you sure?" S.K. said, "Yeah. I mean, it's the same answer as everybody else, right. Like, yeah, I'm gonna follow the law—do the best I can for sure."

The prosecutor exercised a peremptory challenge against S.K., and Holbrook objected under section 231.7. During an off-the-record discussion, the trial court overruled Holbrook's objection. As later memorialized by the court, the prosecutor's "stated justification [for the challenge] was that [S.K.]

6

said that he would give more weight to a civilian's testimony than to a police officer's." Although the court agreed with the defense that this reason was "presumptively invalid," it found that "the presumption [was] overcome by clear and convincing evidence that [S.K.] admitted he could not be fair and impartial." Specifically, S.K. said "that there were a lot of cops on the witness list . . . and so they'd be likely to back each other up." The court also observed that race did not have "specific relevance" in the case, S.K. did not appear to be part of the same cognizable group as Holbrook or any witnesses, and the prosecutor's questioning of S.K. "was thorough and probing."

The trial court allowed the parties to make a further record. In response, defense counsel stated that although she was "unsure" of his "exact ethnicity," S.K. was "brown-skinned" and possibly "Middle Eastern or Southeast Asian." She argued that S.K.'s "bias" against police officers was "actually logical" because it was based on officers' interest in the case's outcome, which was a permissible "factor in determining witness credibility" that S.K. indicated he would apply equally to civilians. Finally, counsel emphasized that S.K. said he could follow the law and "evaluate all witnesses the same way" and "never said . . . he couldn't be fair and impartial."

### 2. General legal standards

Section 231.7 prohibits a party from "us[ing] a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups." (§ 231.7, subd. (a).) The statute is intended to "eliminat[e] the use of group stereotypes and discrimination, whether based on conscious or unconscious bias, in the exercise of peremptory challenges,"

7

and it is to "be broadly construed to further [this] purpose." (Stats. 2020, ch. 318, § 1, subd. (c).)

Upon objection to the use of a peremptory challenge, the party exercising the challenge must identify the reasons for it. (§ 231.7, subd. (c).) Certain reasons, including "[e]xpressing a distrust of or having a negative experience with law enforcement" and "[e]xpressing a belief that law enforcement officers engage in racial profiling," are presumptively invalid. (§ 231.7, subd. (e)(1), (2).) On appeal, the People do not contest the trial court's finding that the prosecutor's reason for excusing S.K.—his indication "that he would give more weight to a civilian's testimony than to a police officer's"—is presumptively invalid.

Where a presumptively invalid reason is given, a trial court must sustain the objection to a peremptory challenge "unless the party exercising the . . . challenge can show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case."[6] (§ 231.7, subd. (e).) "[T]he term 'clear and convincing' refers to the degree of certainty the factfinder must have in determining whether the reasons given for the exercise of a peremptory challenge are unrelated the prospective juror's cognizable group

---

[6] At oral argument, appellant's counsel objected to the ellipsis in this quotation, which he argued "skipped over" the "intermediate test" found in section 231.7, subdivision (g). The ellipsis removes a single word, "peremptory," to make the sentence less repetitive. And subdivision (g), which concerns only three types of presumptively invalid reasons that are all based on a prospective juror's observable behavior *in court*, has nothing to do with this case.

8

membership, bearing in mind conscious and unconscious bias.  To determine that a presumption of invalidity has been overcome, the factfinder shall determine that it is highly probable that the reasons given . . . are unrelated to conscious or unconscious bias and are instead specific to the juror and bear on that juror's ability to be fair and impartial in the case." (§ 231.7, subd. (f).)

The denial of an objection under section 231.7 is reviewed de novo, "with the trial court's express factual findings reviewed for substantial evidence." (§ 231.7, subd. (j).)  In performing this review, we do "not impute to the trial court any findings, including findings of a prospective juror's demeanor, that the . . . court did not expressly state on the record" or "speculate as to or consider reasons that were not given to explain either the party's use of the peremptory challenge or the party's failure to challenge similarly situated jurors who are not members of the same cognizable group as the challenged juror." (*Ibid.*)  The erroneous denial of a challenge under section 231.7 is reversible per se.  (*Ibid.*)

### 3. Analysis

We begin by briefly addressing Holbrook's first claim, that the trial court violated his statutory and constitutional rights by denying his request to seek racial demographic information from prospective jurors.  The only basis on which Holbrook contends that this ruling was prejudicial is that it hampered his "ability to litigate the . . . section 231.7 objection" at issue and deprived him of "an adequate appellate record for this court to review."

Without expressing any opinion on whether the ruling was legally correct, we reject Holbrook's claim.  As the Attorney General observes, the ruling did not preclude Holbrook from asking jurors about their racial identity if a section 231.7 issue arose, yet the defense never sought to obtain this information from S.K.  Thus, Holbrook's claim that the ruling prevented

9

him from effectively litigating his objection to S.K.'s dismissal is forfeited.  In any event, the record sufficiently establishes that S.K. was or was perceived to be a racial minority, and Holbrook does not explain how knowing this juror's specific race or ethnicity would have strengthened the section 231.7 objection.[7]  As a result, we conclude the ruling was harmless under any standard.

We now turn to Holbrook's second claim, that the trial court erred under section 231.7 by overruling his objection to the peremptory challenge against S.K.[8]  Holbrook states in passing that no substantial evidence supports the court's ruling that the presumptive invalidity of the prosecutor's reason was overcome, but he never develops this argument.  Instead, his main contentions relate to section 231.7's procedural requirements.  We discuss each contention in turn.

First, Holbrook claims that section 231.7, subdivision (c)'s requirement that a party state the reasons for a peremptory challenge was violated because the prosecutor stated her reason off the record.  But the trial court identified the prosecutor's proffered reason in ruling, and when allowed to

---

[7] In overruling the section 231.7 objection, the trial court stated that "[i]t's not an issue of [S.K.] being identified as a member of a cognizable group, race, or lifestyle or an assertion that he's of the same group or lifestyle as Mr. Holbrook or anyone else involved in the trial."  Holbrook interprets this remark as a finding that S.K. was not a member of any cognizable group under section 231.7.  In our view, however, the court was merely observing that no one claimed S.K. was or appeared to be a member of the same cognizable group as anyone else in the case.

[8] Holbrook claims that this ruling also violated his federal and constitutional rights to a fair trial, a representative jury, and equal protection.  Because we conclude the trial court did not err under section 231.7, we likewise reject his constitutional claims, on which he presents no separate argument.  (See *People v. Ortiz* (2023) 96 Cal.App.5th 768, 808; cf. *People v. Jimenez* (2024) 99 Cal.App.5th 534, 547, fn. 4.)

make a further record, Holbrook's counsel did not suggest that the court's description of the reason was inaccurate. Thus, we agree with the Attorney General that Holbrook forfeited his argument that the record of the prosecutor's basis for the peremptory challenge is inadequate.

Second, Holbrook claims that "the trial court misapplied the new statutory grounds it was required to consider" under section 231.7. The only alleged instance of this he identifies is that the court did not consider "[w]hether the reason given by the party exercising the peremptory challenge was contrary to or unsupported by the record" under section 231.7, subdivision (d)(3)(F). According to Holbrook, the prosecutor's reason was unsupported because the juror "in fact said he could be fair and follow the instructions." Holbrook cites no authority requiring a court to address *all* the circumstances listed in section 231.7, subdivision (d)(3), which are merely those the court "may consider" in ruling. (§ 231.7, subd. (d)(3).) In any case, there was ample evidence that S.K. was inclined to find police officers less credible than other witnesses, which was not negated simply because he promised to "do [his] best" to follow the law.

Finally, Holbrook complains the trial court did not explicitly determine that it was "highly probable" that the prosecutor's presumptively invalid reason was "unrelated to conscious or unconscious bias and [was] instead specific to the juror and [bore] on that juror's ability to be fair and impartial in the case" under section 231.7, subdivision (f). In fact, the court found that S.K.'s actual or perceived race had no relevance to any aspect of the case, supporting the conclusion that the peremptory challenge was "unrelated to [his] cognizable group membership." (§ 231.7, subd. (f).) The court also specifically found "by clear and convincing evidence that [S.K.] admitted he could not be fair and impartial." While the court may not have used

11

section 231.7, subdivision (f)'s exact words, Holbrook cites no authority requiring it to do so. It is clear that the court was aware of the provision, and absent any contrary indication we presume the court correctly applied the law. (See *Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563.)

In short, Holbrook does not try to show that insufficient evidence supported the trial court's ruling under section 231.7, and his arguments about the statute's procedural requirements are meritless. As a result, he is not entitled to relief based on the successful peremptory challenge to S.K.

B.      *The Prosecutor Did Not Improperly Shift the Burden of Proof.*

Holbrook also claims the prosecutor committed misconduct during closing argument by referring to the defense's ability to present evidence, effectively lowering the People's burden of proof. We are not persuaded.

1.      Additional facts

In her closing argument, Holbrook's counsel highlighted certain evidence the prosecution could have presented but did not, including DNA or fingerprints on the firearm. On rebuttal, the prosecutor responded by reading CALCRIM No. 300, which provides that "[n]either side is required to call all witnesses who may have information about the case or to produce all physical evidence that might be relevant." She then stated, "My only job is to prove beyond a reasonable doubt. And I have that burden. I have the burden to prove the case beyond a reasonable doubt, but [the] defense also ha[s] the power to bring witnesses and to present evidence."

Holbrook's counsel objected, and the trial court overruled the objection. The prosecutor continued, "So [the] defense has the same power as [I do] to subpoena people, to bring people here, . . . to present any evidence they want[,] and that happens in many cases. Yes, you cannot actually consider the fact that [Holbrook] didn't testify, right; that is the law. [¶] You cannot

12

consider that fact for anything. He has the absolute right not to testify. And I have the burden to prove the case beyond a reasonable doubt, but that doesn't mean if defense counsel thinks some evidence can exonerate the [defendant] that they cannot bring in evidence."

Holbrook's counsel again objected, and the trial court again overruled the objection. The prosecutor stated, "So like I said, they can bring any evidence they want—same power to subpoena. So let's say for the prior convictions, [defense counsel] said, oh, there was no fingerprint person. I have proven my case beyond a reasonable doubt. If [defense counsel] thought she [could] exonerate Mr. Holbrook with fingerprints[,] . . . she could bring a fingerprint person and do that." Defense counsel made one more unsuccessful objection, and the prosecutor concluded, "If that was the case, believe me that would have happened. [The d]efense can bring evidence and there was nothing."

### 2. Analysis

Prosecutorial error under state law is established "when a prosecutor 'engage[s] in deceptive or reprehensible tactics in order to persuade the trier of fact to convict.' [Citation.] Federal constitutional error occurs only when the prosecutor's actions 'comprise a pattern of conduct that is serious and egregious, such that the trial is rendered so unfair that the resulting conviction violates the defendant's right to due process of law.' " (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 854.) Where, as here, a claim of prosecutorial error " 'focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' " (*People v. Smithey* (1999) 20 Cal.4th 936, 960.) In answering this question, "[w]e consider the remarks in the context of the argument as a

whole and ' " 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." ' " (*People v. Steskal* (2021) 11 Cal.5th 332, 353 (*Steskal*).)

It is error for a prosecutor " 'to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements.' " (*People v. Hill* (1998) 17 Cal.4th 800, 829.) Thus, a prosecutor "may not suggest that 'a defendant has a duty or burden to produce evidence, or a duty or burden to prove [the defendant's] innocence.' " (*People v. Young* (2005) 34 Cal.4th 1149, 1195–1196.) On the other hand, a prosecutor is entitled to make " ' "comments based upon the state of the evidence or upon the failure of the defense to introduce material evidence or to call anticipated witnesses." ' " (*Steskal, supra*, 11 Cal.5th at p. 351.)

Holbrook claims that "the prosecutor effectively argued that [he] had an *obligation* to produce evidence to prove his innocence" and "effectively testified that, if called, any defense witness would have either implicated [him] or would have had to lie about it." (Italics added.) Holbrook fails to explain how the statements he challenges, that the defense had the power to present other witnesses and evidence, could be interpreted to mean that the defense *had* to present evidence or that any witnesses the defense might present would not be favorable to him. The prosecutor was merely responding to the defense's argument that the People should have presented other evidence by pointing out, accurately, that the defense had the same ability to present that evidence. Moreover, the prosecutor repeatedly stated that she had the burden of proof beyond a reasonable doubt and Holbrook had the right not to testify. We conclude that in the context of the closing arguments as a whole, there is no reasonable likelihood that the jury

14

interpreted the challenged statements in a manner that shifted the burden of proof to the defense.  (See *Steskal*, *supra*, 11 Cal.5th at pp. 352–353.)

Even if the prosecutor's statements had been improper, we would conclude the error was harmless.  Both the prosecutor and Holbrook's counsel emphasized in closing arguments that the People had the burden of proof beyond a reasonable doubt.  The trial court repeatedly instructed the jury on that burden and the presumption of innocence, including specific instructions that Holbrook was "not required" to produce evidence and did "not have to prove that he is not guilty."  Finally, the evidence of guilt was strong, and Holbrook's attempts to cast doubt on whether the firearm was real or the same one seized from him were unpersuasive.  Thus, we have no reasonable doubt that the statements did not affect the verdict, and there is no reasonable likelihood of a different result had the prosecutor not made them. (See *Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

### III.
#### DISPOSITION

The judgment is affirmed.  The trial court is directed to amend the abstract of judgment to delete the fine under Penal Code section 1202.44 and forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

15

_____

Humes, P.J.


WE CONCUR:



_____

Langhorne Wilson, J.



_____

Smiley, J.


*People v. Holbrook*  A168951

16